153 N.J. Super. 584 (1977)
380 A.2d 734
ANTHONY ARNONE AND LAURA ARNONE, PLAINTIFFS,
v.
RAPHAEL J. MURPHY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 4, 1977.
*587 Mr. John W. Yengo for plaintiffs.
Mr. Bernard Horwitz for defendant.
Mr. Edward V. Ryan for Continental Insurance Co. (Mr. William J. Gannon, appearing).
YOUNG, J.C.C., Temporarily Assigned.
The disposition of motions by both parties calls for an interpretation of the term "covered claim" as that term is used in the New Jersey *588 Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1, et seq. (hereinafter Guaranty Association Act.) The motions also present for determination the effect of certain provisions of the Guaranty Association Act upon the distribution of the proceeds of a settlement entered into between a plaintiff and a defendant third-party tortfeasor who is represented by the Guaranty Association, when the plaintiff has previously recovered a worker's compensation award arising out of the same incident.
Plaintiff Anthony Arnone alleges that he sustained injuries while employed by Schiavone Construction Company on the Garden State Parkway April 22, 1974 as the result of the negligent operation of a motor vehicle by defendant Raphael J. Murphy. Plaintiff Laura Arnone asserts a per quod claim. At the time of the accident Murphy carried automobile liability coverage issued by Gateway Insurance Company, now in liquidation. The Guaranty Association undertook to defend Murphy. When the suit was reached for trial the attorneys advised the court that the case was settled for the policy limits of $15,000, subject to the terms of a "Stipulation of Dismissal" which are set out in the margin.[1]
*589 It appears that Arnone received a worker's compensation award comprising temporary compensation of $5,488, permanent compensation of $13,200 and medical expenses of $9,451, for a total of $28,039. On or about May 9, 1974 the Underwriters Adjusting Company, on behalf of its principal, Kansas City Fire and Marine Insurance Company, advised Murphy in writing, in compliance with provisions of the Workmen's [now Workers'] Compensation Act, N.J.S.A. 34:15-40, that the carrier expected to be reimbursed "out of any settlement which may be effected or any judgment entered" for any payments which it may make in the compensation proceedings.
The contentions of the parties and of the compensation carrier are here summarized. Counsel for the Guaranty Association, in moving for an order directing a return of the sum on deposit with the court, contends that the presence of *590 the worker's compensation lien takes plaintiff's claim out of the statutory category of a "covered claim" which, by definition, may not include any amounts due any reinsurer, or insurer as subrogation or otherwise. N.J.S.A. 17:30A-5(d). Counsel projects that legal premise to support the proposition that any plaintiff who has previously recovered a worker's compensation award would thereafter be barred from recovering, either in settlement or judgment, against a tortfeasor whose liability insurance was issued by an insurer now represented by the Guaranty Association. In effect, recovery against the third-party tortfeasor would be barred in such instances.
Plaintiffs have also filed a motion for an order to direct the Clerk of the Superior Court to pay to them the funds on deposit. In his affidavit plaintiffs' counsel represents that he does not intend to remit any of the proceeds of the settlement to any insurance company as subrogation or otherwise, "unless mandated by law." Moreover, counsel argues that nothing in the applicable statute would preclude him from earning a counsel fee in his third-party action.
Counsel for the compensation carrier was permitted, without objection from the parties, to argue and to present a memorandum of law. The compensation carrier argues that the motion of the Guaranty Association comes too late, pointing to the fact that payment has already been made to the registry of the court so that whatever happens to the money is no longer of concern to the Guaranty Association. Additionally, the compensation carrier distinguishes a "lien" from a "claim," and concludes that Arnone asserts a valid claim under the statute, notwithstanding the fact that the compensation carrier is holder of a lien conferred by the Worker's Compensation Act, N.J.S.A. 34:15-40, which may or may not be enforced or compromised.
What counsel for the Guaranty Association is asking this court to declare is that a third-party tortfeasor may avoid his liability entirely when (1) his liability insurance *591 was issued by a company which, because of a declaration of insolvency, is now represented by the Guaranty Association, and when (2) plaintiff has previously received a worker's compensation award. An auxiliary effect of such declaration would amount to the extinguishment of the statutory right of reimbursement by the plaintiff's employer or by the employer's compensation carrier from a third-party recovery in such instances. The Guaranty Association places the provisions of the Guaranty Association Act, N.J.S.A. 17: 30A-1 et seq., in conflict with the provisions of the Workers' Compensation Act, N.J.S.A. 34:15-1 et seq., and takes the position that the latter must give way to the former. For reasons to be stated, this court rejects an interpretation of the relevant sections of the Guaranty Act which would, in effect, deprive plaintiff from prosecuting a common-law action in tort and which would disturb a long-settled application of the scheme of worker's compensation as it pertains to the right of reimbursement or subrogation.
The New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 et seq., is not accompanied with a legislative history. In the absence of legislative reports or debates the court is obliged to analyze the language of the statute in the context of the historical circumstances surrounding its enactment. See Salz v. State House Comm'n, 18 N.J. 106 (1955); Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 299 (1968). The reason of the law, that is, the motive which led to the making of it, is one of the most certain means of establishing the true sense of its terms. See Caputo v. The Best Foods, 17 N.J. 259, 264 (1955). The passage of the Guaranty Association Act (L. 1974, c. 17, § 1, eff. April 11, 1974), was the Legislature's response to the judicial declaration of insolvency of several property-liability insurance companies. Thousands of claimants and policyholders in New Jersey were left without protection or recourse. The legislative intent *592 of this remedial legislation is declared in the purpose clause of the statute:
17:30A-2. Purpose

a. The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.
To carry out the multiple purposes of the statute, the Legislature created a private, nonprofit, unincorporated legal entity known as the New Jersey Property-Liability Insurance Guaranty Association. Its membership is comprised of persons who write all kinds of direct insurance, with exceptions to be noted presently, admitted or authorized to transact the business of insurance in this State. N.J.S.A. 17:30A-5(f); N.J.S.A. 17:30A-2(b).
The provisions of the Guaranty Association Act must be interpreted to protect policyholders and claimants and to advance their interests rather than the interests of the association. See New Jersey Property-Liability Ins. Guaranty Ass'n v. Sheeran, 137 N.J. Super. 345, 351 (App. Div. 1975). The claimants and the claims which the statutory scheme was designed to protect are defined in § 5 of the statute, here excerpted in relevant part:

17:30A-5. Definitions.

As used in this act:

* * * * * * * *
d. `Covered claim' means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State. `Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, except for any Special Joint Underwriting Association *593 within the meaning of the Joint Underwriting Association Act, P.L.... . ., c.... as subrogation recoveries or otherwise; * * * * * [Emphasis in original]
Does the claim of plaintiff herein "include any amount due any reinsurer, insurer, insurance pool or underwriting association?" This court concludes that it does not. Arnone asserts a direct claim against an alleged third-party tortfeasor; the suit is not brought by an assignee nor by the workers' compensation carrier by way of subrogation. N.J.S.A. 34:15-40(f). The claim is more appropriately defined in the language of the New York statute as an "injured party claim." McKinney's Consol. Laws, Insurance, § 330.
The fact that plaintiff has previously received a worker's compensation award which conferred a statutory lien in favor of the compensation carrier does not take plaintiff's claim outside of the "covered claim" context of the Guaranty Association Act. A distinction must be drawn between a "claim" and a "lien." A claim in the case at bar is a demand for damages in the form of a cause of action arising from an alleged tort, and is personal to the plaintiff as the injured party. By contrast, a lien is distinct from the debt it secures; it is but an incident of an obligation and a remedy therefor in the nature of security. See Kalio Universal, Inc. v. B.A.M., Inc., 95 N.J. Super. 393, 398 (App. Div. 1967). The compensation carrier has never asserted that it has a claim against the fund administered by the Guaranty Association.
Moreover, the term "insurer" as used in the Guaranty Association Act, N.J.S.A. 17:30A-5 (d), must be read to refer to "member insurer." The term "member insurer" is defined in subsection (f) of N.J.S.A. 17:30A-5 to mean "any person who (1) writes any kind of insurance to which this act applies under section 2b, including the exchange of reciprocal or interinsurance contracts and (2) is admitted or authorized to transact the business of insurance *594 in this State; * * *" (Emphasis supplied). The Guaranty Association Act specifically exempts workers' compensation insurance from its purview. N.J.S.A. 17:30A-2(b). As a consequence, the payment of the claim submitted by plaintiff herein will not result in the "shuffling of the funds among the member companies," as counsel for the Guaranty Association argued. Underwriters of workers' compensation insurance do not contribute to the risks for which the insolvent property-liability insurance company fund was created.[2] The Workmen's Compensation Act makes provision for a security fund for insolvent insurance carriers. N.J.S.A. 34: 15-103, et seq.
The Guaranty Association overlooks the fact that the Workers' Compensation Act, N.J.S.A. 34:15-1 et seq., merely measures the employer's liability to the injured employee. A third-party tortfeasor's liability to an injured employee may be greater than the employer's net pecuniary liability. The statute itself provides that "the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein." N.J.S.A. 34: 15-40. The rights of the employee, the employer, the third-party tortfeasor and the compensation carrier are delineated in the following passage of Judge Conford writing for the Supreme Court in Schweizer v. Elox Div. of Colt Industries, 70 N.J. 280 (1976):
The employee, for his part, is guaranteed recovery for his common-law damages against contributing third-party tortfeasors or for his compensation award, whichever is greater, but he may not duplicate these recoveries. But the act is neutral insofar as the third-party *595 tortfeasor is concerned, leaving him with his common-law liability to the injured employee, or, if the latter has been recompensed therefor to any extent by compensation payments, to the statutorily subrogated employer who has made those payments. * * * * *
The subrogation provisions simply represent the legislative policy determinations as to the appropriate measure of the employer's net pecuniary liability vis-a-vis the employee. [at 287-288]
The Legislature did not intend by the enactment of the Guaranty Association Act to disturb "this carefully articulated scheme" which reserved to the injured employee his cause of action against the third-party tortfeasor, and created a right of reimbursement in the employer. The Legislature must be assumed to have been thoroughly conversant with this venerable statute and of the judicial construction placed thereon. Barringer v. Miele, 6 N.J. 139, 144 (1951). A legislative body is presumed not to have intended to disregard or to modify a long-settled statutory policy, unless the purpose so to do is declared in certain and unequivocal terms. Modern Industrial Bank v. Taub, 134 N.J.L. 260, 263-264 (E. & A. 1946). Moreover, a construction of a statute which would render another statute inoperative and meaningless must be avoided. In re Keogh-Dwyer, 85 N.J. Super. 188, 197-198 (App. Div. 1964).
There are certain equitable considerations which deserve mention in disposing of the dual motions before this court. If the Guaranty Association's application for the return of the money on deposit were granted, the only interests which would receive protection would be those of the Guaranty Association and its insured, defendant Murphy. As noted, the Appellate Division has declared the interests of policyholders and claimants to be paramount. New Jersey Property-Liability Ins. Guaranty Ass'n v. Sheeran, supra, 137 N.J. Super. at 351. By negotiating the stipulation of dismissal, for a settlement of plaintiffs' claims within the insurance policy limits of $15,000, the Guaranty Association insulated itself as well as its client, defendant Murphy, from a jury award in excess of his policy limits. See Rova Farms Resort *596 v. Investors Ins. Co., 65 N.J. 474 (1974). It would be unconscionable to nullify the terms of the stipulation, return the payment which represents the consideration for the dismissal of plaintiffs' claims against the tortfeasor and leave plaintiff with his recovery against his employer in workers' compensation. Inasmuch as Gateway Insurance Company could have entered into the settlement of the Arnone suit, so the Guaranty Association should be held to its settlement. The Guaranty Association Act requires the Association to "be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer, as if the insurer had not become insolvent. * * *" N.J.S.A. 17:30A-8(a)(2).
Counsel for the compensation carrier stated on the record that his client would not look to the Guaranty Association to enforce its worker's compensation lien. The fund in the registry of the court should be disbursed to plaintiffs.
For the reasons here stated, drawing upon the authorities and decisional law cited, the motion of defendant represented by the Guaranty Association is denied; the motion filed by plaintiff is granted.
NOTES
[1] "The matter in difference in the above entitled matter having been amicably adjusted by and between the parties, it is hereby stipulated and agreed that the same be, and it is hereby dismissed, with prejudice and without costs against either party, subject to the following terms and conditions:

1. There shall be deposited with the Clerk of the Superior Court or Registry of the Court, on behalf of the defendant, Raphael J. Murphy, by the New Jersey Property-Liability Insurance Guaranty Association (Guaranty Association) the sum of $15,000.00 less the statutory deduction of $50.00 pursuant to N.J.S.A. 17:30A-8a (1), or $14,950.00.
2. The Plaintiff, Anthony Arnone, acknowledges that the deposit of $14,950.00 is being made on behalf of the defendant, Raphael J. Murphy, by the New Jersey Property-Liability Insurance Guaranty Association for the Gateway Insurance Company (now in liquidation) Account, without waiving any rights that the Guaranty Association may have under the NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION ACT, N.J.S.A. 17:30A-1, et seq. in general and N.J.S.A. 17:30A-5d in particular, it being the position of the Guaranty Association that no part of the said $14,950.00 shall be payable to any re-insurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise, which in the opinion of the Guaranty Association includes the insurance carrier for Schiavone Construction Company, respondent in the Workmen's Compensation proceedings referred to in Paragraph 3 herein, and to the extent any part of the $14,950.00 is so payable, the claim being asserted by the plaintiff is not a "covered claim" (as defined by N.J.S.A. 17:30A-5d) and should be returned to the Guaranty Association.
3. Distribution of the aforesaid $14,950.00 or any part thereof shall be deferred until the conclusion of the pending Workmen's Compensation proceedings in the case of Anthony Arnone v. Schiavone Construction Company, C.P. No. P-20637, for injuries sustained by the said Anthony Arnone in the course of his employment on April 22, 1974 (the within entitled matter being a Third Party action), and then only upon application to the Court for its determination subject to the claim of the New Jersey Property-Liability Insurance Guaranty Association as expressed in Paragraph #2 of this Stipulation.
 Dated: Sept. 1, 1976
 By Bernard Horwitz By John W. Yengo 
 BERNARD HORWITZ, ESQ. JOHN W. YENGO, ESQ.
 Attorney for Deft. Murphy Atty. for Pltfs. Arnone"

[2] Payments into the fund administered by the Guaranty Association are based upon premiums collected only on types of insurance covered by the act. N.J.S.A. 17:30A-8(a)(3)(d). As noted infra, worker's compensation is not a type covered by the act. N.J.S.A. 17:30A-2(b).