MARIA FERRARI, administratrix, & another[1] *vs.* ALBERT TOTO.

Suffolk. January 24, 1980. — March 31, 1980.

Present: PERRETTA, ROSE, & KASS, JJ.

*Workmen's Compensation Act,* Recovery from third person. *Insurance,* Insolvency of insurer. *Massachusetts Insurers Insolvency Fund.*

In a negligence action arising out of an accident which occurred in the scope of the plaintiff's employment but was caused by a negligent third party, the liability of the Massachusetts Insurers Insolvency Fund on a policy issued to the third party was to be reduced by so much as the plaintiff had received from workmen's compensation insurance on account of the same injury. [484-488]

CIVIL ACTION commenced in the Superior Court on October 15, 1974.

The case was reported to the Appeals Court by *Lynch,* J.

*Norman J. Fine* for the plaintiffs.

*Joseph C. Tanski* for the defendant.

KASS, J. The question reported to this court, pursuant to G. L. c. 231, § 111, and Mass.R.Civ.P. 64, 365 Mass. 831 (1974), is whether workmen's compensation benefits received by Pasquale Ferrari (the intestate of the plaintiff Maria Ferrari) negate, set off or limit the obligation of the Massachusetts Insurers Insolvency Fund (Fund) to pay the plaintiffs' claims arising out of an accident which occurred

---

[1] Anna Ferrari, wife of the plaintiff's intestate.

in the scope of Pasquale Ferrari's employment, but was
caused by a negligent third party. We hold that the liability
of the Fund is reduced by so much as the claimant has re-
ceived on account of the same injury from workmen's com-
pensation insurance.

The facts set forth in a statement of agreed facts are as fol-
lows: On July 10, 1974, Pasquale, while in the course of his
employment, was struck by an automobile driven negligently
by Albert Toto and suffered injuries warranting recovery of
damages in excess of $35,000. Pasquale received over
$35,000 in workmen's compensation benefits under the
statutory scheme set forth in G. L. c. 152; he and his wife
also sued Toto for damages arising out of the accident.[2] At
the time of the accident, Toto was insured for liability to the
extent of $20,000 by Rockland Mutual Insurance Company
(Rockland), which was subsequently adjudged insolvent by
the Supreme Judicial Court. As a consequence of Rock-
land's insolvency, the Fund became potentially liable for
claims against the policies issued by that company, of which
the plaintiffs' claim was one. G. L. c. 175D, § 5(1)(b), in-
serted by St. 1970, c. 261, § 1.

On the ground that Pasquale had already recovered
workmen's compensation benefits in excess of the limits of
Toto's policy with Rockland, the Fund denied liability to
the Ferraris on that policy. The parties have agreed that
resolution of the question reported will dispose of the case;
i.e., if the Fund is required to pay the plaintiffs at all, their
recovery will be the full $20,000 limit of the policy, but
nothing more.

Under G. L. c. 152, § 15, as amended through St. 1971,
c. 941, § 1, "[any] sum recovered [in an action against a
third party] shall be for the benefit of the [workmen's com-
pensation] insurer, unless such sum is greater than that paid
by it to the employee." It follows that because Pasquale
had already received $35,000 from his employer's work-

---

[2] Following Pasquale's death on May 8, 1977, his daughter, Maria Fer-
rari, in her capacity as administratrix, was substituted as party plaintiff.

men's compensation insurer, the plaintiffs would retain nothing of what they might recover on account of the Rockland insurance policy; i.e., anything they recovered would redound to the benefit of the workmen's compensation insurer. See *Richard* v. *Arsenault*, 349 Mass. 521, 524 (1965); *Mahoney's Case*, 371 Mass. 891, 892 (1976). Since the Fund, in turn, assesses the net cost of its claim payments to its member insurance companies, G. L. c. 175D, § 5(1)(c), a disbursement by the Fund on account of the plaintiffs' claim would result largely in the shuffling of funds among insurance companies.

The statutory scheme which established the Fund seeks to avoid this sort of movement of funds among insurers. General Laws c. 175D, § 5(1)(a), obligates the Fund to the extent of "covered claims" against insolvent insurers, but § 1(2), inserted by St. 1970, c. 261, § 1, excludes from the definition of covered claims "any amount due any reinsurer, insurer, insurance pool or underwriting association." As used in c. 175D, however, the word "insurer" has a specifically defined meaning which applies "unless the context clearly requires otherwise." [3] That statutory definition says "insurer" shall mean "any person who (a) writes any kind of insurance to which this chapter applies, including the exchange of reciprocal or interinsurance contracts, and (b) is licensed to transact insurance in the commonwealth." [4] Under G. L. c. 175D, § 2, workmen's compensation is one of nine forms of direct insurance which the statute excepts from participation in the Fund. [5] We are faced with the question, therefore, whether the exclusion of amounts due an insurer from claims for which the Fund must pay is limited to Fund member insurers or whether "the context clearly requires otherwise" and the exclusion extends to seg-

---

[3] G. L. c. 175D, § 1, first par.

[4] General Laws c. 175D, § 1(5).

[5] The other forms of insurance which do not participate in the Fund are life, accident and health, title, surety, disability, credit, mortgage guaranty and ocean marine insurance.

ments of the insurance industry which are not participants in the Fund. We think the latter is the case. In setting up the class of claims not covered, § 1(2) refers to "any amount due any reinsurer, insurer, insurance pool, or underwriting association." An insurance pool or underwriting association would not fit into the c. 175D definition of "insurer" as a member insurer, and the class referred to in the exclusion provision must, in context, mean something more, i.e., insurers beyond member insurers. Chapter 175D is patterned after the "Post-Assessment Property and Liability Insurance Guaranty Association Model Act"[6] in which the distinction is more clearly drawn. In the Model Act, at § 5(5), the defined term equivalent of G. L. c. 175D, § 1(5), is "member insurer"; the covered claim exclusion refers to any insurer, without the member qualification (Model Act § 5[3]). Reading c. 175D as a whole and comparing it to the Model Act, we perceive no design by the Legislature to expand the category of covered claims, with consequent impact on the insurance buying public in the form of higher premium rates. Cf. *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund,* 373 Mass. 798, 803-804 (1977).

Moreover, having in mind the purposes of the Fund discussed below, it does not seem to us that a claim, to the extent it has already been compensated from some other source, is an unpaid claim. In order to qualify as a "covered claim" under the statute, a claim must be unpaid. G. L. c. 175D, § 1(2). See *Florida Ins. Guar. Assn.* v. *Dolan,* 355 So.2d 141, 142 (Fla. Dist. Ct. App. 1978).

We are of the opinion that the Fund is excused from paying claims if the ultimate beneficiary is an insurance company.

This reading of the statutory design rests as well on the description and analysis of the Fund which the Supreme Judicial Court made recently in *Massachusetts Motor Vehicle Reinsurance Facility* v. *Commissioner of Ins.,* 379 Mass. 527,

---

[6] See 2 Official N.A.I.C. Model Insurance Laws Regulations and Guidelines 540-1 (published by NIARS Corporation under the auspices of the National Association of Insurance Commissioners 1977).

530-535 (1980). In that opinion the court observed that the statutory scheme embodied in c. 175D is intended to benefit the public by ensuring that all drivers with policies covered by the Fund will be paid for losses incurred, *id.* at 534-535; i.e., the driving public is to be protected against the conse- quences of financial failure by an automobile liability insur- er. In cases such as this, an alternative source of compensa- tion from an insurance carrier is available, and members of the driving public, or persons injured by the driving public, are not left unprotected. The parties to the case at bar have stipulated that no claim is to be asserted against Toto if there is no recovery against the Fund. But for that stipula- tion, a tortfeasor in Toto's position, i.e., looking to the Fund for insurance coverage, would be personally liable for so much of any damages found against him as exceeded the policy limits of his liability insurance. He would not (irre- spective of a stipulation of the sort present here) be person- ally liable for so much of his liability as would have been covered by his insurance but for the insurer's insolvency and the Fund's statutory exemption from coverage.

The statutory design of G. L. c. 175D contemplates that the public will bear ultimate financial responsibility for the Fund since member insurance companies of the Fund are to recoup payments to the Fund in the rates and premiums they charge for insurance policies. G. L. c. 175D, § 13. See *Massachusetts Motor Vehicle Reinsurance Facility* v. *Com- missioner of Ins.*, 379 Mass. at 530. Requiring payment by the Fund in the instant case would, thus, pass added premi- um costs on to the driving public, contrary to the legislative intent. We appreciate that this leaves nonmember insurers, and by derivation their customers, bearing a portion of the financial burden for claims against insolvent insurance com- panies. We think this is consistent with the design of the Fund to indemnify injured persons, but not the insurance industry.

Considering similar facts, a New Jersey court has held a fund for insolvent insurers liable to tort claimants even though the insurance proceeds were subject to the lien of a

workmen's compensation insurer. *Arnone* v. *Murphy,* 153 N.J. Super. 584 (1977). The court in that case reasoned that the claim was that of the injured party, not that of the insurer entitled in turn to receive the recovery; hence, although the term "covered claim" in the New Jersey statute excluded any amount due an insurer, the court decided no amount was due an insurer. because the insurer's interest was a lien rather than a claim. *Id.* at 593-594. Since in our statutory scheme any sum recovered against a third party is "for the benefit of the insurer" (G. L. c. 152, § 15), we find the reasoning in *Arnone* v. *Murphy* unpersuasive, and we decline to follow it. We are more persuaded by the emphasis laid on the principle of "non-duplication of recovery" in *Lucas* v. *Illinois Ins. Guar. Fund,* 52 Ill. App. 3d 237, 239 (1977), and *Florida Ins. Guar. Assn.* v. *Dolan,* 355 So. 2d at 142. Contrast *Reliance Ins. Co.* v. *Robertson,* 7 Mass. App. Ct. 735, 738-739 (1979).

On the question reported, therefore, we answer that the workmen's compensation benefits received by the plaintiff Pasquale Ferrari, since they exceeded the policy limits of the Rockland policy, limit in its entirety the obligation of the Fund to pay the plaintiffs' claims. A judgment is to enter dismissing the action.

*So ordered.*