van Gestel, J.
This matter comes before the Court on cross motions by the Massachusetts Insurers Insolvency Fund (the “Fund”) for summary judgment and by Arbella Mutual Insurance Company (“Arbella”) to dismiss the complaint. There are three other defendants in addition to Arbella: Nicole Gianino (“Nicole”), Andrea Gianino (“Andrea”), and Valdemar DiSilva (“Di-Silva”). Nicole and Andrea each have filed answers, but do not seem to have joined in or responded to either of the cross motions. DiSilva was served on June 22, 2000, but he has not appeared or answered, nor has he been defaulted.
The essence of the complaint presents issues principally between the Fund and Arbella, although Nicole also would seem to have an interest in the outcome.
The facts are not really in dispute. Rather, the matters presented involve statutory and contractual interpretation by the Court.
BACKGROUND
The Fund, based in Boston, “is a nonprofit, unincorporated entity created by G.L.c. 175D, Sec. 3 (1994 *387 ed.).” Clark Equipment Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 (1996). G.L.c. 175D is patterned on the Post-Assessment Insurance Guaranty Association Model Bill. Id. at 167, n.2. The Fund is obligated to pay covered claims against an insolvent insurer in place of the insolvent insurer. "The Fund’s obligations and expenses are assessed to a broad range of insurers, including all liability and property insurers who write insurance in the Commonwealth . . . Insurers recoup the amounts which they pay into the fund by increasing their rates and premiums ... The cost of paying claims against insolvent insurers ‘is thus ultimately passed on to the insurance-buying public.’ ” Id. at 167.
Arbella is a Massachusetts corporation with its principal place of business in Andover. It is in business as an insurer licensed to transact insurance business in Massachusetts.
On February 28, 1999, Nicole, while a passenger in a vehicle owned and operated by Andrea, was involved in a motor vehicle accident (the “accident”) in Medford, in which she was injured. At the time of the accident, Andrea was insured under an automobile policy (the “Arbella Policy”) issued by Arbella. The Arbella Policy provided coverage for bodily injury for which Andrea was legally responsible. The limits of the bodily injury protection under the Arbella Policy are $20,000 per person and $40,000 per accident.
The Arbella Policy also provided Andrea and members of her household with uninsured motorist benefits (“UM benefits”) for injuries caused by uninsured autos. The limits of the UM benefits are $20,000 per person and $40,000 per accident.
The Arbella Policy also provides that where a company insuring an auto becomes insolvent, such formerly insured auto is then considered to be uninsured for purposes of the UM Part of the Arbella Policy.
Nicole was living in the household of Andrea at the time of the accident.
The other vehicle involved in the February 28, 1999 accident was owned and operated by DiSilva. Andrea and DiSilva were each responsible for the injuries suffered by Nicole in the accident.
DiSilva was insured under a policy (the “Trust Policy”) issued by Trust Insurance Company (“Trust”). Trust, at the time of the accident, also was an insurer licensed to transact insurance business in Massachusetts.
Trust was determined to be insolvent by the Supreme Judicial Court on July 26, 2000, effective August 2, 2000. As provided in c. 175D, by reason of the insolvency of Trust, the Fund became obligated to pay certain “covered claims” arising out of and within the coverage of certain Trust insurance policies. The Trust Policy provided coverage for bodily injury for which DiSilva was legally responsible. The limits of the bodily injury protection under the Trust Policy are $50,000. Nicole asserted a claim against Andrea that was covered under the bodily injury protection provisons of the Arbella Policy. That claim was settled on February 4, 2000, when Arbella paid Nicole $7,000.
Then, on August 2, 2000, the effective date of Trust’s insolvency, Nicole asserted a claim against DiSilva that she insists was covered by UM benefits under the Arbella Policy. This claim was based on the contention that the UM benefits became due because of Trust’s insolvency. Initially, Arbella denied the claim.
There thus became a dispute between Arbella and the Fund as to which would be responsible to Nicole: the Fund because of Trust’s insolvency, or Arbella because Trust’s insolvency caused DiSilva’s vehicle to become uninsured.
Arbella’s response to the Fund’s motion for summary judgment on the foregoing issue was to serve a motion to dismiss the Fund’s complaint. The basis for Arbella’s motion to dismiss is that it has now[1] agreed to proceed to arbitration with Nicole to determine what, if anything, is due to her as UM benefits under the Arbella Policy. As a result, Arbella claims that this action has become moot because the Fund now has no basis of claim against Arbella, nor does it have standing to pursue rights, if any, of Nicole.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, there are dueling motions, such that both the Fund and Arbella, although for quite different reasons, argue that there are no material facts in dispute[2] and their respective motions should be allowed. The Fund claims that the Court can, and should, rule in its favor, based solely upon an interpretation of the statutory and contractual language and the setting in which it exists. Arbella argues that the mootness of the situation warrants a ruling in its favor.
Logic dictates that the Court consider Arbella’s motion to dismiss first, even though it was served in response to the Fund’s motion for summary judgment.
Arbella leaves its motion to essentially speak for itself. It filed no written support therefor, nor is there any affidavit or other evidence supporting its basic contention that it has agreed to proceed to arbitration with Nicole over what may be due, if anything, under the UM benefits provided in the Arbella Policy. For the limited purpose of deciding this motion, and for none *388 other, this Court will assume the accuracy of Arbella’s statement about proceeding to arbitration with Nicole. This arbitration, nevertheless, does not moot this Court’s action on the Fund’s case and summary judgment motion.
The Fund’s summary judgment motion seeks judicial declarations that will not be resolved in the arbitration between Arbella and Nicole. The Fund, among other things, is not a party to that arbitration. Further, the Fund seeks declarations in this case to the effect that: (1) Arbella is obligated to provide UM benefits to Nicole because, under Arbella’s Policy, Trust’s insolvency makes DiSilva’s vehicle uninsured: and (2) the Fund has no obligation to Nicole in connection with the accident until she first exhausts her UM rights under the Arbella Policy. In addition, the Fund seeks a judicial determination that its obligations to Nicole, if any, should be reduced to the extent she receives UM recovery from Arbella. In significant part, these issues are between Nicole and the Fund, but Arbella is a party with an interest in their outcome and should not be allowed to absent itself from this case. Consequently, the motion to dismiss should be DENIED.
The Court next begins its analysis of the merits of the Fund’s position by examining the statutory powers granted to the Fund by G.L.c. 175D, Sec. 5(l)(a) and (b):
(1) The Fund shall:
(a) be obligated to the extent of the covered claims against the insolvent insurer existing prior to the declaration of insolvency and arising within sixty days after the declaration of insolvency . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.
(b) be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent: . . .
The definition of a “covered claim” in Sec. 1 of c. 175D is: “an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the property from which the claim arises is presently located in the commonwealth.”
Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
The Fund itself is a
“statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Commissioner of Ins. v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The [Fund] is, in essence, simply a conduit to which certain non-insolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the [Fund] to pay “covered claims” to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and claims. G.L.c. 175D. The nature of the transaction and the activity engaged in is the payment of “covered claims,” and transactions are motivated by legislative mandate, not business or personal reasons.
Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776-77 (1992).
Thus, the Fund is not an insurer, as such.
The Fund is “obligated to the extent of the covered claims.” The “covered claims” are claims “which arise!] out of and [are] within the coverage of an insurance policy” of an insolvent insurer.
The issues at the heart of this case are whether Nicole, at the time of her accident, was a household member of Andrea’s and was injured, at least in part, by the actions of the operator of an automobile that is uninsured. If so, the Arbella Policy provides coverage because Nicole was living in the household of Andrea at the time.
The particular language of the Arbella Policy reads:
[W]e will pay damages for bodily injury to people injured ... in certain accidents caused by uninsured . . . autos . . . Sometimes the company insur *389 ing the auto responsible for an accident will . . . become insolvent. We consider such an auto to he uninsured for purposes of this Part.
Arbella in its motion to dismiss has effectively admitted that its policy provides UM coverage for Nicole in connection with her claims for bodily injury against DiSilva. The arbitration that Arbella pleads that it has agreed to[3] is not to decide whether there is any UM coverage, but rather “what if anything is due” Nicole.
It seems appropriate to note here that the Fund’s motion is not limited in its direction at Arbella. All defendants are involved. But no defendant, not even Arbella, except for its speaking motion to dismiss, has filed anything in opposition to the Fund’s motion.
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
Mass.R.Civ.P. Rule 56(e).
The Fund also points to the provisions in G.L.c. 175D, Sec. 1(2) describing a “covered claim” — which is all that it must pay — as:
an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer . . . “Covered claim” shall not include any amount due any . . . insurer
Both the Supreme Judicial Court’s and the Appeals Court’s decisions in Ferrari v. Toto, 383 Mass. 36 (1981), 9 Mass.App.Ct. 483 (1980), support the position that any payment by the Fund of bodily injury benefits to Nicole would, in effect, be an “amount due” Arbella. In the Appeals Court opinion in Ferrari, which opinion was affirmed on further appellate review, that court said: “[T]he Fund is excused from paying claims if the ultimate beneficiary is an insurance company." 9 Mass.App.Ct. 483, 486 (1980).
Later in the Appeals Court’s Ferrari opinion, Judge Kass said:
The statutory design of G.L.c. 175D contemplates that the public will bear ultimate financial responsibility for the Fund since member insurance companies of the Fund are to recoup payments to the Fund in rates and premiums they charge for insurance policies. G.L.c. 175D, sec. 13 . . . Requiring payment by the Fund in the instant case would, thus, pass added premium costs on to the driving public, contrary to the legislative intent. We appreciate that this leaves nonmember insurers, and by derivation their customers, bearing a portion of the financial burden for claims against insolvent insurance companies. We think this is consistent with the design of the Fund to indemnify injured persons, but not the insurance industry.
Id. at 487.
In this case, a result absolving the Fund or limiting the amount of its obligations to Nicole is even less Draconian to Arbella than in Ferrari. Arbella is a member of the Fund, unlike the workers’ compensation carrier in Ferrari.
The two appellate decisions in Ferrari are significant to any action taken by this Court here. The Legislature or the Massachusetts appellate courts can revise or reinterpret the Ferrari opinions. This Court should only follow them. And to follow them means that to the extent the Fund, rather than Arbella, first pays bodily injury benefits to Nicole, this “would . . . pass added premium costs on to the driving public, contrary to the legislative intent.” Ferrari, supra, 9 Mass.App.Ct. at 487. As this Court reads what Judge Kass said in Ferrari, a payment does not have to be made to Arbella — in other words, it does not have to be an “amount due” to the insurer — but rather a payment by the Fund that absolves Arbella of having to make that payment to the claimant would be contrary to the legislative intent in creating the Fund.
Even more significant to this case is the mandate of G.L.c. 175D, Sec. 9. It reads:
Any person having a claim against his insurer under any insolvency provision of his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant’s insurance policy.
A claimant, such as Nicole here, must therefore exhaust her claims under the UM benefits of the Arbella Policy prior to seeking any recourse from the Fund. Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 389 (1980). “The purpose of the exhaustion requirement in the first sentence of Sec. 9 is to render the Fund a source of last resort in the event of an insolvency. The second sentence of Sec. 9 states a clear legislative policy that any recovery to which a claimant is entitled under his own policy shall be offset to reduce the liability of the Fund.” Id. at 390.
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment is ALLOWED, and the defendant Arbella’s cross motion to dismiss is DENIED.
A final judgment shall enter in favor of the Massachusetts Insurers Insolvency Fund declaring that:
1. Arbella Mutual Insurance Company is obligated to provide UM benefits to Nicole Gianino, in whatever amount maybe appropriate, under the Arbella *390 Policy on account of the accident which occurred on February 28, 1999;
2. The Massachusetts Insurers Insolvency Fund has no obligation to Nicole Gianino on account of the accident which occurred on February 28, 1999, until Nicole Gianino first shall have exhausted her rights under the Arbella Policy; and
3. Any amount payable by the Fund with respect to the claim of Nicole Gianino on account of the accident which occurred on February 28, 1999, must be reduced by the UM limits of the Arbella Policy and payments made thereunder.

 What “now” means is unclear. However, the motion reciting the agreement is dated October 4, 2001.

 Indeed, Arbella never even responded to the Fund’s Superior Court Rule 9A(b)(5) statement of undisputed facts.

 A statement binding on Arbella. See G.L.c. 231, Sec. 87.