WILLIAM PILON, JR.'S CASE.

No. 06-P-858.

Suffolk. March 12, 2007. - May 29, 2007.

Present: GRASSO, ARMSTRONG, & VUONO, JJ.

*Massachusetts Insurers Insolvency Fund. Workers' Compensation Act,* Subsequent injury, Reimbursement of insurer.

The reviewing board of the Department of Industrial Accidents (board) correctly affirmed the conclusion of an administrative judge that an employee's incapacity was due to a single injury, for which the Massachusetts Insurers Insolvency Fund (Fund), which stood in the shoes of the employer's insolvent insurer, was liable, rather than a subsequent injury for which a successor insurer would be liable, where the evidence before the administrative judge did not compel a conclusion that a new injury was a contributing cause to the employee's ensuing incapacity, but permitted the judge to infer periodic recurrences of vibration-induced upper extremity problems caused by the initial injury [169-171]; however, the board erred in requiring the Fund to reimburse the successor insurer through the employee for temporary insurance benefits that the successor insurer had paid to the employee, where G. L. c. 175D, § 1(2), prohibits the payment by the Fund of any amount for the benefit of an insurer, and likewise prohibits the Fund from reimbursing a successor insurer by passing such a payment through the employee [171-173].

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Paul M. Moretti & Mark D. Robins* for Massachusetts Insurers Insolvency Fund.

*Michael K. Landman* for the insurer.

GRASSO, J. The Massachusetts Insurers Insolvency Fund (Insolvency Fund) appeals from a decision of the reviewing board of the Department of Industrial Accidents (board) affirming the decision of an administrative judge that the Insolvency Fund is responsible for payment of workers' compensation benefits to William Pilon, Jr. The Insolvency Fund asserts that the adminis-

trative judge erred in (1) finding that Pilon's incapacity was due to a single injury, rather than a subsequent injury for which a successor insurer would be liable; and (2) ordering the Insolvency Fund to reimburse the successor insurer for temporary incapacity payments paid to Pilon. We discern no error in the determination that Pilon suffered but a single injury. The board erred, however, in ordering the Insolvency Fund to reimburse Pilon for the benefit of the successor insurer, because G. L. c. 175D, § 1(2), prohibits the Insolvency Fund from making payments that benefit an insurer.

1. *Pilon's employment and injury.* There is no dispute that on June 3, 1998, while employed by R.S. Guerette Corporation (Guerette), Pilon sustained carpal tunnel injury and nerve damage to his arms and hands due to constant use of vibrating demolition equipment.[1] At the time of Pilon's injury, Guerette was insured by Credit General Insurance Company (Credit General).[2]

On November 1, 1998, Pilon began employment at Specialty Contracting Services, Inc. (Specialty). In the course of that employment, he again experienced pain and numbness in his elbows, wrists, and hands. Although one-half of Pilon's work at Specialty was in the office, he still used vibrating demolition equipment. In July, 1999, the pain made a "sudden recurrence" and worsened to a point that on December 28, 2000, Pilon could no longer write or drive. He had severe pain and some numbness in areas around his right elbow, hand, and the web area between his right thumb and index finger. He had similar, though less severe, pain on the left side. Pilon ceased working for Specialty on December 28, 2000.

At that time, AIM Mutual Insurance Company (AIM) was Specialty's insurer. From the beginning of Pilon's employment with Specialty until November 13, 2000, when AIM became Specialty's insurer, Specialty did not have workers' compensation insurance. Consequently, the Workers' Compensation Trust Fund (Trust Fund)[3] was liable for any compensable injury to

---

[1]Although Pilon reported feeling pain as early as his second week at Guerette, he reported an injury on June 3, 1998, when the pain intensified.

[2]When Credit General later became insolvent, the Insolvency Fund stepped in its place to respond to Pilon's claim pursuant to G. L. c. 175D, § 5.

[3]See note 8, *infra.* The Trust Fund is not a party to this appeal.

Pilon during the period that Specialty was uninsured. See G. L. c. 152, § 65(2).

2. *Pilon's claims and the insurer liable for his injury.* Where an employee suffers two or more compensable injuries that are causally related to a resulting incapacity, only one insurer is chargeable for the payment of compensation for the same disability. The successive insurer rule provides that the insurer covering the risk at the time of the most recent injury that bears causal relation to the disability claimed must pay the entire compensation. See *Fitzpatrick's Case,* 331 Mass. 298, 300 (1954); *Casey's Case,* 348 Mass. 572, 574 (1965); *Zerofski's Case,* 385 Mass. 590, 592 (1982). The subsequent injury need not be a significant contributing cause to the incapacity. So long as it is to the "slightest extent" a contributing cause, the insurer at the time of the recent injury will be held liable to cover the entire incapacity. See *Rock's Case,* 323 Mass. 428, 429 (1948). The determination whether there was a subsequent injury and whether it had causal connection to the ensuing incapacity is essentially a question of fact, *Costa's Case,* 333 Mass. 286, 288 (1955); see also *Zerofski's Case,* 385 Mass. at 594, on which expert medical opinion is required. See *Casey's Case, supra.*

The Insolvency Fund maintains that the administrative judge erred in finding that Pilon's compensable incapacity was due only to the injury sustained on June 3, 1998, a determination that was upheld summarily by the board. Neither the board nor the administrative judge erred. Findings of fact, assessments of credibility, and determinations of the weight to be given the evidence are the exclusive function of the administrative judge. See *Chapman's Case,* 321 Mass. 705, 707 (1947). We will not disturb the judge's findings that are "reasonably deduced from the evidence and the rational inferences of which it was susceptible." *Ibid.* On the evidence before him, the administrative judge did not err in concluding that Pilon sustained but a single compensable injury, which occurred on June 3, 1998, when he was employed by Guerette, and that Pilon's subsequent complaints were but a continuing manifestation of his original injury. Nor did the board err in summarily affirming that determination. See G. L. c. 152, § 12(2); *Scheffler's Case,* 419 Mass. 251, 257-258 (1994).

The evidence, including the medical notes and reports, did not compel the administrative judge, as matter of law, to find a new injury that was a contributing cause to Pilon's ensuing incapacity. See *Chapman's Case*, 321 Mass. at 707; *Costa's Case*, 333 Mass. at 288. Rather, the administrative judge could reasonably infer that the evidence merely demonstrated periodic recurrences of vibration-induced upper extremity problems caused by the June, 1998, injury.

The closest a medical expert came to describing a new injury was a 2001 progress note of Dr. Daniel Gottlieb which stated that Pilon's "arm problems are work related either by causation or exacerbation."[4] Doctor Gottlieb's note left open the possibility that work-related activity after 1998 may have only provided the occasion for the reappearance of symptoms rather than caused a new injury. See *Rock's Case*, 323 Mass. at 429-430. The administrative judge was at liberty to accept or reject Dr. Gottlieb's opinion. See *Sutherland's Case*, 2 Mass. App. Ct. 58, 61 (1974). Indeed, he adopted the report of Dr. Hillel Skoff, the impartial examiner required under G. L. c. 152, § 11A. Doctor Skoff was the only medical expert who identified a time period for the cause of the incapacity.[5] Based on his examination of Pilon in 2002 and his review of several years' worth of medical records, Dr. Skoff concluded that the work performed during Pilon's employment with Guerette was the cause of the disability.[6] Accordingly, the administrative judge was warranted in finding that Pilon sustained a single compensable injury while employed

---

[4]The administrative judge, sua sponte, allowed additional medical evidence pursuant to G. L. c. 152, § 11A(2). He believed that the § 11A report warranted supplementation where significant periods of the disability before and after the impartial physician's examination were in question.

[5]The Insolvency Fund correctly points out that *Zerofski's Case*, 385 Mass. at 594-595, establishes that no specific incident causing the harm is required to find a new injury: an "identifiable condition that is not common and necessary to all or a great many occupations." However, the administrative judge stated no requirement to the contrary and recognized that Pilon's pain had been ongoing, starting as early as his second week of employment at Guerette. Viewed in these terms, the issue is not what caused a subsequent injury but whether there was a new injury at all. The administrative judge found little expert medical opinion to support a causal connection between Pilon's disability and a new injury, and his finding of a single injury is not plainly wrong.

[6]Neither party chose to cross-examine Dr. Skoff.

by Guerette and that the successive insurer rule did not apply. The Insolvency Fund, which stood in the shoes of Guerette's insolvent insurer, was liable to pay benefits for Pilon's injury.

3. *The reimbursement order.* Pilon made an initial claim for benefits on June 13, 2001, alleging that he was injured while employed by Specialty during the period that Specialty was insured by AIM. He then filed a second claim for benefits on August 1, 2001, alleging an earlier work-related injury while employed by Guerette. Prior to final resolution of Pilon's claim for benefits and a determination of the employer and insurer responsible, an administrative judge issued a conference order that required AIM to pay temporary total and temporary partial incapacity benefits to Pilon. See G. L. c. 152, § 10A.[7] Subsequent to that conference order, the Insolvency Fund and the Trust Fund were added as parties, and Pilon's separate claims for benefits were consolidated for hearing.[8] As discussed previously, the administrative judge found the Insolvency Fund (standing in the shoes of Credit General as insurer of Guerette) responsible for payment of Pilon's benefits. In connection with that finding, the administrative judge ordered the Insolvency Fund to reimburse AIM for the payments that AIM had made to Pilon pursuant to the earlier conference order. The board affirmed the order of reimbursement with one adjustment: the Insolvency Fund would send the payment directly to Pilon, who would then reimburse AIM.

AIM argues that it should be reimbursed for temporary incapacity benefits that it paid to Pilon because it appealed the conference order and the obligation was found ultimately to be that of Pilon's prior employer, Guerette, and not of AIM. A prohibition on its reimbursement, AIM argues, would give final effect to that informal conference order and run contrary to the structure of the workers' compensation system, which is to provide an informal and expedited mechanism for the award of benefits. See G. L. c. 152, § 10A; 452 Code Mass. Regs. §§ 1.10 et seq. (1993).

[7]Both AIM and Pilon appealed the conference order.

[8]Pilon filed a third claim for benefits, alleging that he sustained an injury on or before November 12, 2000, while employed by Specialty and prior to Specialty being insured by AIM. As to this claim, Specialty was uninsured, and the Trust Fund would be liable for benefits.

The question, however, is not whether AIM has a right of reimbursement against Credit General, Guerette's insurer, which it undoubtedly would were Credit General still solvent, but whether the Insolvency Fund must make good on that reimbursement. We agree with the Insolvency Fund that the order to reimburse AIM is an error of law, as it expressly contravenes G. L. c. 175D, § 1(2). Whatever force AIM's argument may have as a matter of policy, the Legislature has decided otherwise and imposed a prohibition that neither the Department of Industrial Accidents nor this court may ignore.

The Insolvency Fund is not an insurer. See *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 776 (1992). Rather, it is a statutorily mandated nonprofit association created to provide limited protection to insureds and claimants in the event of insolvency of an insurer. See *ibid.*; G. L. c. 175D, § 5. The statutory benefits provided by the Insolvency Fund are not to be extended beyond those expressly provided for in G. L. c. 175D. See *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 486 (1980), *S.C.*, 383 Mass. 36 (1981). The statutory limitation on the Insolvency Fund's obligation minimizes the financial burden on the insurance-buying public and conserves the Insolvency Fund's limited resources. "The [Insolvency] Fund's obligations and expenses are assessed to a broad range of insurers . . . [who] recoup the amounts which they pay into the Insolvency Fund by increasing their rates and premiums." *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund*, 423 Mass. 165, 167 (1996).

Subject to the limitations of G. L. c. 175D, the Insolvency Fund is obligated to pay "covered claims" against an insolvent insurer. See G. L. c. 175D, § 5(1)(*a*); *Massachusetts Insurers Insolvency Fund* v. *Ladd*, 39 Mass. App. Ct. 553, 555 (1995). All other claims not provided for in G. L. c. 175D must be denied. See G. L. c. 175D, § 5(1)(*d*). An express exclusion from the definition of "covered claim," and hence from the obligation of the Insolvency Fund, is any amount for "the benefit" of an insurer. See G. L. c. 175D, § 1(2); *Ferrari* v. *Toto*, 9 Mass. App. Ct. at 486. In consequence, the Insolvency Fund is precluded from reimbursing AIM, an insurer, for temporary incapacity benefits AIM paid to Pilon.

What the statute directly prohibits may not be circumvented by indirection. The statutory proscription against payments for the benefit of an insurer likewise prohibits the Insolvency Fund from reimbursing AIM by passing that payment through the employee.[9] Where Pilon is the conduit of payment, the ultimate beneficiary is still an insurer in contravention of the statute. See *Ferrari* v. *Toto*, 9 Mass. App. Ct. at 486-487 ("the [Insolvency] Fund is excused from paying claims if the ultimate beneficiary is an insurance company . . . [as] the design of the [Insolvency] Fund [is] to indemnify injured persons, but not the insurance industry"). Contrast *Massachusetts Insurers Insolvency Fund* v. *Ladd*, 39 Mass. App. Ct. at 557 (Insolvency Fund obligated to pay insured driver for unpaid claim despite payments from other sources because "[n]ot one cent" would go to other insurers). Such an indirect payment to AIM clearly thwarts the purpose of the Insolvency Fund, which is to indemnify injured persons and policyholders, not solvent insurers. See *Dufresne's Case*, 51 Mass. App. Ct. 81, 88-89 (2001). See also *McGuirl* v. *Anjou Intl. Co.*, 713 A.2d 194, 199 (R.I. 1998) (insolvency fund not obligated to reimburse insurer directly or indirectly).

We reverse that portion of the board's decision requiring the Insolvency Fund to reimburse AIM or Pilon for temporary incapacity benefits. In all other respects, the decision of the board is affirmed.

*So ordered.*

---

[9]Pilon's claim for temporary incapacity benefits is not an "unpaid claim," because Pilon has already received payment for those benefits from AIM under the conference order. See G. L. c. 175D, § 1(2); *Ferrari* v. *Toto*, 9 Mass. App. Ct. at 486. Pilon has no further entitlement to such benefits and no right to double recovery.