Rouse, J.
INTRODUCTION
This is an action to resolve an insurance coverage dispute under an umbrella policy with regard to asbestos-related bodily injury claims brought against Eastern Refractories Co., Inc. (Eastern). This court (Rouse, J.) previously ruled that an asbestos exclusion in the applicable umbrella policy bars coverage for personal injury claims arising out of Eastern’s sale, handling or distribution of asbestos products. Eastern now moves for partial summary judgment against National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), asserting that it is entitled to a declaration that the umbrella policy provides coverage for non-distribution asbestos-related claims. National Union opposes this motion and counters that it is entitled to a declaration that the remaining claims asserted against Eastern are excluded. For the following reasons, Eastern’s motion for partial summary judgment is DENIED and National Union’s motion for partial summary judgment is ALLOWED.
BACKGROUND
The record reveals the following undisputed facts. Eastern has been engaged in installing insulation products since the 1950s. Some of the insulation products, which were produced by other manufacturers, contained asbestos. Eastern faces numerous personal injury actions stemming from its installation activities (the contracting claims). The plaintiffs in the contracting claims are typically members of the construction trades or employees at construction sites where Eastern performed subcontracting services.
Over the years, Eastern has maintained insurance for its activities with several different insurers. The only policies relevant to the resolution of the motions currently before the court are policies issued to Eastern by National Union. Eastern obtained a one million dollar general comprehensive liability policy (GLC policy) from National Union, effective for the period August 1, 1980, through August 1, 1981. National Union also issued a five million dollar umbrella policy to Eastern effective for the period between September 1, 1980, through January 1, 1982.
Eastern sought coverage under the GLC policy for the asbestos-related claims. On October 20, 1992, this court (Zobel, J.) ruled than the GLC policy contained no enforceable asbestos liability exclusion. Thereafter, National Union undertook to defend Eastern. After exhausting the limits of the GLC policy, Eastern requested coverage pursuant to the umbrella policy.
The umbrella policy provided coverage for amounts in excess of (1) amounts recoverable under the GLC policy, or (2) the $10,000 net loss, if the claim was not covered under the GLC policy. The umbrella policy contained several endorsements. Endorsement 6 provided:
*173 ASBESTOS LIABILITY EXCLUSION
It is agreed that such insurance as is afforded by the policy for products liability applies subject to the following additional exclusion:
This insurance does not apply to bodily injury arising out of the Named Insured(s) product sold, handled or distributed in connection with the use of or exposure to asbestos or asbestos fibers.
Endorsement 7 provided:
PRODUCTS-COMPLETED OPERATIONS (FOLLOWING FORM) COVERAGE
In consideration of the premium charged, it is understood and agreed that such coverage as is afforded by this policy shall not apply to PERSONAL INJURY or PROPERTY DAMAGE arising out of the PRODUCTS OR COMPLETED OPERATIONS HAZARD, unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Under lying insurance, for the full limits shown therein, and then only for such hazards for which coverage is afforded under said underlying insurance.
The umbrella policy defined product hazard, the insured’s products, and completed operations hazard as follows.
“Product Hazard” means
Personal Injury and Property Damages arising out of the Insured’s products or reliance upon a representation or warranty with respect thereto, but only if the Personal Injury or Property Damage occurs away from premises owned by or rented to the Insured and after physical possession has been relinquished to others.
“Completed Operations Hazard” includes
Personal Injury and Property Damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the Personal Injury or Property Damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Insured. “Operations” include materials, parts or equipment furnished in connection therewith.
The “Insured’s Products” are “goods or products manufactured, sold, handled or distributed by the Insured or others trading under his name! ] . . .”
Both Eastern and National Union moved for partial summary judgment, seeking a declaration with respect to National Union’s duty to defend Eastern against asbestos-related claims under the umbrella policy. On July 14, 1995, this court (Rouse, J.) denied Eastern’s motion in its entirety and allowed National Union’s cross-motion for summary judgment to the extent that it found that National Union had no duty to indemnify Eastern for bodily injury claims resulting from Eastern’s sale, handling, or distribution of products. The court denied National Union’s motion “to the extent that National Union must indemnify [Eastern] for personal injuries arising out of completed operations hazards, as that term is defined in the policy.”
DISCUSSION
The question presented is whether or not the completed operations provision provides coverage for the asbestos-related contracting claims. The proper interpretation of an insurance contract is a question of law. Massachusetts Bay Transp. Auth. v. Allianz Ins. Co., 413 Mass. 473, 476 (1992), citing Nelson v. Cambridge Mut. Fire Ins. Co., 30 Mass.App.Ct. 671, 673, review denied, 410 Mass. 1104 (1991). In interpreting insurance contracts, the court must “construe and enforce unambiguous terms according to their plain meaning." Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995). To resolve the dispute between the parties, the court must interpret the scope of the completed operations and product hazard provisions ofthe umbrella policy. If the court concludes that the contracting claims arose out of Eastern’s “operations,” and not a “product hazard,” National Union must defend Eastern.
The principle that an insurer’s duty to defend is broader than its duty to indemnify is well-settled. Trustees of Tufts Univ. v. Commercial Union Ins., 415 Mass. 844, 855 n.10 (1993). In discerning whether a duty to defend attaches, the court examines the allegations of the complaint to see whether they “state or adumbrate a claim covered by the policy terms.” Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1984). The allegations need only be reasonably susceptible of an interpretation that they state a claim within the policy’s coverage provisions for a duty to arise. Id. Eastern, as the insured seeking coverage, has the initial burden to prove that the contracting claims are covered under the completed operations provision. Thereafter, the burden shifts to National Union to show that the product hazard exclusion prevents coverage. See Ratner v. Canadian Universal Ins. Co., 359 Mass. 375, 381 (1971); Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 321 (1991). If the contracting claims, reasonably construed, fall within the completed operations provision, the policy obligates National Union to defend Eastern unless National Union establishes that an exclusion bars coverage.
In determining the scope of product hazard and completed operations provisions, the courts have focused on the alleged cause of the plaintiffs injuries. See, e.g., United States Fidelity and Guaranty Co. v. Brennan, 410 N.E.2d 613, 616 (Ill.App.Ct. 1980); Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co., 477 N.E.2d 1227, 1237 (OhioCt.App. 1984); Friestad v. Travelers Indemn. Co., 393 A.2d 1212, 1217 & n. 8 (Pa.Super.Ct. 1978). When a defect inherent in the product itself caused the injury, the product hazard provision applies. If, on the other hand, the *174 plaintiff alleges that negligence unrelated to any defect in the product caused the injury, the completed operations provision determines coverage. See Brewer v. Home Ins. Co., 710 P.2d. 1082, 1085 (Ariz.Ct. App. 1985), citing Aetna Cas. & Sur. Co. v. Richmond, 143 Cal.Rptr. 75, 81 (Cal.Ct.App. 1977); see also Henderson, Insurance Protection for Products Liability and Completed Operations-What Every Lawyer Should Know, 50 Neb.L.Rev. 415, 416 (1971); Law of Liability Insurance, §11.02(2], at 11-32-11-33 (Matthew Bender 1996). An allegation that the insured’s negligence contributed to a defect in the product does not negate application of a product hazard exclusion. Aetna Cas. & Sur. Co. v. Richmond, supra at 81. Rather, to avert the product hazard exclusion, the insured’s negligence must be “an act sufficiently removed from the quality of the product in question . . .” Id., quoting Cravens, Dargan & Co. v. Pacfic Indemn. Co., 105 Cal.Rptr. 607, 612 (Cal.Ct.App. 1972).
The courts have defined the product hazard exclusion in terms of product liability law. Friestad v. Travelers Indemn. Co., supra at 1214. The Massachusetts Appeals Court has recognized this principle when construing the exclusionary language of other types of product liability insurance. See Mitchell v. Stop & Shop Cos., Inc., 41 Mass.App.Ct. 521, 523-24 (1996) (vendor’s broad form coverage, “an outgrowth of product liability law,” covers injuries caused by the product itself). In products liability law, the failure to warn or to provide adequate warning about a product’s dangers constitutes a product defect. Accordingly, the product hazard exclusion encompasses claims for failure to warn and breach of warranty, so long as such claims are based on conduct or circumstances related to a defect in the product itself. Viger v. Commercial Ins. Co. of Newark, N.J., 707 F.2d 769, 773 (3d Cir. 1983) (product hazard exclusion applicable where failure to warn claim related to product defect).
Moreover, when construing the provisions at issue, the court must give the phrase “arising out of’ its usual and ordinary meaning. Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). Construed according to its usual and ordinary meaning, “arising out of’ is “much broader than ‘caused by. ’ ” New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass.App.Ct. 722, 726, review denied, 423 Mass. 1108 (1996). The phrase “arising out of’ is considered to be synonymous with “originate” or “come into being.” Id., quoting Webster’s Third New Int’l Dictionary, 117 (1981); see also Barnstable County Mut. Fire Ins. Co., supra at 605-06 (negligent entrustment claim “[arose] out of the ownership . . . operation, [or] use” of any motor vehicle).
Based on the foregoing principles, the critical question here is whether the contracting claims asserted against Eastern for, inter alid, failure to warn, breach of warranty, and civil conspiracy allege negligence by Eastern sufficiently independent of the hazardous nature of the asbestos insulation product it installed such that they originate with, or came into being as a result of, Eastern’s “operations.” See Fibreboard Corp. v. Hartford Accident & Indemn. Co., 20 Cal.Rptr.2d 376, 382-86 (Cal.Ct.App. 1993) (claims for negligence, strict liability, breach of warranty, market share liability, civil conspiracy which arose out of insured’s product came within product hazard exclusion).
Eastern asserts that the contracting claims arose out of its “operations” because the claims stem from, inter alia, Eastern’s negligence in installing insulation containing asbestos. Relying on the definition of “operations” which includes “materials,” Eastern contends that the plain language of the umbrella policy compels coverage. Eastern argues that, because it furnished the insulation products in connection with its contracting services, the contracting claims necessarily arose out of its “operations.”
National Union concedes that there is coverage for asbestos-related claims arising out of Eastern’s completed operations, but asserts that the contracting claims did not arise out of Eastern’s “operations.” National Union maintains that the plaintiffs have alleged that Eastern installed defective insulation products, and that this defect caused their injuries. As such, National Union argues that the allegations of the complaints demonstrate that the contracting claims arose out of a “product hazard, ” and are, therefore, excluded.
Eastern’s argument is problematic in two respects. First, it ignores the analytical framework the courts have employed to distinguish between “operations” and “product hazards.” Second, if adopted, the broad interpretation of “operations” urged by Eastern would render the product hazard exclusion inapplicable even in instances when the loss clearly arose out of a defect in a product “handled” by Eastern. See Sherman v. Employers’Liab. Assurance Corp., 343 Mass. 354, 357 (1961) (court should prefer interpretation of an insurance contract which gives reasonable meaning to all provisions over one that renders some provisions meaningless); cf. Friestad v. Travelers Indemn. Co., supra at 1216-17 (broad interpretation of “handled” in definition of product hazard exclusion rejected because it would render coverage under completed operations provision illusory). In addition to the policy’s language and the parties’ intentions, the court must examine the alleged cause of the plaintiffs’ injuries.
An instructive case is Johnson v. Studyvin, 828 F.Sup. 877 (D.Kan. 1993). In Johnson, a contractor selected and installed ceiling texture which contained asbestos in a home purchased by the plaintiffs. Id. at 879. The plaintiffs sued the contractor to recover for bodily injuries and property damage they sustained as a result of exposure to asbestos dust. Id. at 880. The insurance policy contained both a product hazard and completed operations exclusion substantively identical to the one contained in National Union’s umbrella *175 policy. Id. at 879-80. The court held that the plaintiffs’ claims were barred under both exclusions. Id. at 884. In concluding that the product hazard exclusion applied, the court reasoned that the application of the ceiling texture was not “sufficiently removed from the quality of the product in question” because “the hazardous nature of the asbestos which [the contractor] applied to the ceiling [was] the quality of the ceiling texture which ha[d] caused the [claimants’] property damage and personal injuries.” Id., quoting Cravens, Dargan & Co., supra at 612.
This case presents a similar situation. Eastern selected and installed insulation that contained asbestos. The plaintiffs in the contracting cases allege that they sustained injuries from exposure to asbestos incorporated in the insulation. The plaintiffs do not allege that Eastern negligently installed the insulation. As in Johnson v. Studyvin, supra, Eastern’s installation services were not “sufficiently removed” from the hazardous nature of the asbestos it installed. The inherently defective nature of the asbestos which Eastern installed is the quality of the insulation which caused the plaintiffs’ bodily injuries. Thus, the hazard exclusion bars coverage for the contracting claims.
This case is distinguishable from those in which the courts have determined the product hazard exclusion to be inapplicable. See, e.g., Scarborough v. Northern Assurance Co., 718 F.2d 130, 136 (5th Cir. 1983) (failure to warn claims not based on defective product; therefore, product hazard exclusion not applicable); Florida Farm Bureau Mut. Ins. Co. v. Gaskins, 405 So.2d 1013, 1014-15 (Fla.Dist.Ct.App. 1981) (product hazard exclusion not applicable because herbicide “was merely the instrumentality through which the damage was done[;]’’ negligent delivery of wrong herbicide proximately caused the damage); Chancler v. American Hardware Mut. Ins. Co., 712 P.2d 542, 547-48 (Idaho 1985) (failure to warn claim based on insured’s negligence in rendering service not within product hazard exclusion); Lessak v. Metropolitan Cas. Ins. Co., 151 N.E.2d 730, 735 (Ohio 1958) (negligent sale of B-B pellets to minor not within product hazard exclusion because plaintiff did not allege that pellets were in any manner defective).
Under the umbrella policy, which defines Eastern’s “product” to include “goods or products manufactured, sold, handled or distributed by [Eastern] or others trading under his name [ ] . . .” (emphasis supplied), the inherently defective insulation supplied by Eastern constitutes its “product.” The interpretation of “handled,” considered in conjunction with the fact that the defective nature of the insulation provides the basis for all of the plaintiffs’ claims, is reasonable. Moreover, this interpretation is consistent with the purpose of product hazard insurance which is to provide coverage for injuries caused by defective products. Accordingly, the court concludes that the contracting claims did not arise out of Eastern’s “operations.” National Union, therefore, is not obligated to defend Eastern against the asbestos-related contracting claims pursuant to the umbrella policy’s hazard product exclusion.
ORDER
For the foregoing reasons, it is hereby ORDERED that Eastern’s motion for partial summary judgment be DENIED, and National Union’s motion for partial summary judgment be ALLOWED.