Curran, Dennis J., J.
This action for declaratory judgment arises from an underlying medical malpractice suit against defendants Jan C. Rockwood, M.D., and Wachusett Emergency Physicians, P.C., based on allegations that their negligent provision of medical care was a substantial contributing factor in causing the conscious pain and suffering and wrongful death of the decedent, Arthur Mountzuris.[3] On September 4, 2008, the plaintiff, Massachusetts Insurers Insolvency Fund (“the Fund”), filed a complaint for declaratory relief pursuant to G.L.c. 231A, seeking a declaration that the underlying malpractice action is a single “covered claim” for the purposes of G.L.c. 175D, the Massachusetts Insurance Insolvency Statute (the “Fund Act”), and that the Fund’s liability with respect to claims against Dr. Rockwood is thus capped below $300,000.00. The Fund also requests a declaration that it has no obligation with respect to claims against Wachusett because Wachusett is not covered for those claims under the relevant policy. The Fund now moves for summary judgment on its complaint for declaratory relief. For the reasons below, the motion is ALLOWED.
BACKGROUND
In her underlying complaint for malpractice, Lisa Mountzuris alleges that Dr. Rockwood and Wachusett committed medical malpractice in May 2001, resulting in the wrongful death of Arthur Mountzuris on May 24, 2001. Dr. Rockwood and Wachusett were insured under policies issued by Lawrenceville Property and Casualty Co., Inc., for the period beginning January 1, 2001, and ending January 1, 2002. The policy covering Dr. Rockwood provides limits of $1 million for “Each Medical Incident” and a total of $3 million for Individual Professional Liability coverage. The policy covering Wachusett provides limits of $1 million for “Each Medical Incident” and a total of $3 million for Corporate/Partnership Liability coverage.
In 2003, Lawrenceville (“Lawrenceville”) merged into MIIX Insurance Company. On April 9, 2008, a court of competent jurisdiction declared MIIX to be insolvent and ordered that it be liquidated. Upon the determination of MUX’s insolvency, the Fund became obligated pursuant to G.L.c. 175D to pay certain “covered claims” arising out of the insolvent insurer’s policies.[4]
Section IV of each policy, titled “Limits of Liability,” provides:
(a) The limit of liability stated in the declarations page as “each medical incident is the total limit of the Company’s liability for damages due to each medical incident. This limit of liability shall apply regardless of (i) the number of persons or entities claiming injury arising from the medical incident; (ii) the number of claims or suits brought on account of the medical incident; (iii) the number of persons or organizations insured under this policy: or (iv) whether claims or suits are first brought in this policy period or any subsequent policy period.
(Emphasis in original.)
The policies define “medical incident” to include “all acts or omissions in the rendering of or failure to render professional services from which a claim arises or claims arise. All such acts or omissions tied together with all related acts or omissions in the rendering of such professional services to all persons involved therein or affected thereby shall be considered one medical incident.” (Emphasis in original.)
Section II of each policy, titled “Exclusions,” provides:
This insurance does not apply to liability of the insured: . . . (i) corporation/partnership under Coverage Agreement B with respect to injury arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians or nurse anesthetists, or by any paramedical for whom a premium charge is shown on the declarations page.
(Emphasis in original.)
The defendants oppose the Fund’s motion for summary judgment. They contend that the underlying malpractice action, which includes claims for conscious pain and suffering and wrongful death, comprises separate “covered claims.” They allege that G.L.c. 229, §2, creates claims for wrongful death on behalf of each statutory beneficiary,[5] and that G.L.c. 229, §6, creates a separate claim for conscious pain and suffering on behalf of the decedent’s estate. Finally, they contend that the Fund is liable for the claims asserted against Wachusett.
DISCUSSION
The Fund is a nonprofit unincorporated legal entity that is “available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Poznik v. Massachusetts Med. Prof'l Ins. Assoc., 417 Mass. 48, 52 n.5 (1994). The Fund is not itself an insurer; rather, it stands in the shoes of the insolvent insurer to provide limited protection to insureds and claimants. See Pilon’s Case, 69 Mass.App.Ct. 167, 172 (2007). The Legislature established the Fund as a “source of last resort.” Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 390 (1980). Accordingly, the Fund Act directs that the Fund shall only “adjust, compromise, settle and pay covered claims to the extent of the Fund’s obligation and shall deny all other claims.” G.L.c. 175D, §5(l)(d). Under G.L.c. 175D, §1(2), the extent of the Fund’s obligation is determined by the relevant terms of the insolvent insurer’s policy. With the exception of workers’ compensation claims, the Fund is obligated to offer indemnity only for “that amount of each covered claim which ... is less than three hundred thousand dollars.” G.L.c. 175D, §5(1) (a).
*471 Here, the policies define a “medical incident” to encompass “all acts or omissions from which a claim arises or claims arise.” They also provide that the policy limit is the total amount recoverable for each medical incident, regardless of the number of claims or suits that arise from the incident. The defendants submit that the fact that the policies lump multiple claims into a single medical incident does not necessarily mean that all claims arising from a medical incident under the policy constitute a single “covered claim” for the purposes of the Fund Act. Instead, they urge that because the policies acknowledge that multiple claims may arise from a single incident, the Fund is obligated to provide indemnity for each separate claim.[6] The Court disagrees.[7]
The Fund Act defines “covered claim” as an “unpaid claim... which arises out of and is within the coverage of an insurance policy . . .” G.L.c. 175D, §1(2). In this case, the policies’ terms of coverage clearly aggregate all claims based on a particular medical incident into a single $1 million policy limit per such incident. Although the policies contemplate that multiple claims may arise from a single medical incident, they specifically do not provide for separate payouts of each claim.[8] Because the policies treat all possible legal claims as a single insurance claim for the purposes of establishing the policy limits, the Fund Act’s definition of covered claim must be read with similar effect. This parallel construction is consistent with the principle that the Fund’s obligations are to be determined by reference to the relevant terms of the policy. See G.L.c. 175D, §1(2).
Thus, while Mountzuris’s separate claims in the underlying malpractice suit technically fall “within the coverage of Ithe] insurance poliches]” to the extent that they collectively do not exceed the policy limit of $1 million, G.L.c. 175D, §1(2), those claims must be aggregated and made subject to the single cap on recovery for a particular medical incident. Lawrence-ville/MIIX clearly defined the scope of its liability in terms of each medical incident rather than in terms of individual claims or injuries. If the Court were to accept the defendants’ argument that each legal claim against Dr. Rockwood and Wachusett is a separate “covered claim” under the Fund Act, then the Fund could potentially be held liable for more than what the policies themselves provided. The Court will not construe the Fund Act in a manner that extends the obligations of the Fund beyond those which the insolvent insurer voluntarily assumed by agreement. See G.L.c. 175D, §5(b), (d). To do so would be to ignore the express terms of the insurance policies, which are, after all, the point of reference for determining the extent of the Fund’s indemnity obligations. See G.L.c. 175D, §1(2).
As Lawrenceville/MIIX’s liability on the insurance policies would be limited to $1 million per medical incident regardless of the number of claims or claimants arising therefrom, the term “covered claim” for the purposes of determining the Fund’s obligation under G.L.c. 175D, §1(2), incorporates any and all claims against Dr. Rockwood. Accordingly, the Fund will only be obligated to pay up to $300,000.00 on Dr. Rockwood’s behalf.
Mountzuris’s complaint also demands judgment against Wachusett based on the theoiy that it is vicariously liable for Dr. Rockwood’s individual actions. Section II(i) of the policy covering Wachusett, titled “Exclusions,” excludes coverage “with respect to injuiy arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians . . .” Therefore, the policy does not provide coverage to Wachusett for Mountzuris’s claims, which have arisen solely out of the alleged acts or omissions of Dr. Rockwood, the treating physician.[9] Accordingly, the claims against Wachusett are not “covered claims” under G.L.c. 175D, §1(2), and the Fund has no obligation with respect to them.
ORDER
The plaintiffs motion for summary judgment is ALLOWED.
It is further ORDERED that judgment shall enter for the plaintiff declaring that: (1) the Fund is only obligated to pay up to $300,000.00 with respect to claims against Dr. Rockwood; and (2) the Fund has no obligation with respect to claims against Wachusett. For the foregoing reasons in this memorandum, the counterclaim of the defendants is DISMISSED, and a declaration shall issue that the Fund is obligated to pay covered claims issued to Dr. Rockwood and Wachusett for a total value of up to $300,000, and further, that the Fund is not obliged to pay attorney fees and defense costs in both the underlying action and this action.

Mountzuris v. Rockwood et al., Worcester Superior Court, Civil Action No. 2002-0611.

A “covered claim” is “an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth.” G.L.c. 175D, §1(2).

Arthur Mountzuris has three statutory beneficiaries under G.L.c. 229, §2.

The cases that the defendants cite in support of treating each claim separately under the Fund Act are neither controlling nor persuasive, as they involve situations where the policy language did not clearly provide for aggregation of claims. That is not the case here, where the policies unambiguously provide that a single coverage limit applies for each medical incident regardless of how many persons claim injuiy or how many claims are brought on account of the medical incident. “Unambiguous terms are construed in their usual and ordinary sense.” McGregor v. Allamerica Ins. Co., 449 Mass. 400, 402 (2007).

This conclusion was also reached in Massachusetts Insurers Insolvency Fund v. Casado, Bristol Superior Civil Action No.: 08-1173 (McLaughlin, J.).

Under the policies, each medical incident covers “all persons involved therein or affected thereby,” which broadly encompasses any statutory claims by the decedent’s beneficiaries and estate in the underlying malpractice suit. The policies aggregate all such claims by providing that each medical incident is subject to the $1M policy limit “regardless of . . . the number of persons or entities claiming injury . . . [or] the number of claims or suits brought on account of the medical incident.”

The defendants urge the Court not to construe the exclusion in Section II(i) literally, because to do so would eliminate the very coverage for which Wachusett paid a premium. However, the exclusion does not eliminate all coverage based on vicarious liability, as the defendants suggest, but rather eliminates such coverage only where an injury arises solely out of acts or omissions by the persons identified in the provision. Conversely, then, the exclusion does not bar coverage for Wachusett in situations where an injury does not arise solely out of acts or omissions by the identified persons. The Court need not speculate as to what those situations might be; it is satisfied that the exclusion does not by its terms render Wachusett’s coverage under the policy illusory.