Fabricant, Judith, J.
INTRODUCTION
This cases arises out of an underlying medical malpractice action (the underlying action) filed in the Superior Court.[2] The medical provider held professional liability insurance written by an insurer that became insolvent, resulting in potential liability of the Massachusetts Insurers Insolvency Fund (the Fund). The Fund filed this action for declaratory judgment to resolve a controversy regarding the extent of its potential liability for covered claims in the underlying action. Before the Court is the Fund’s motion for summary judgment. For the reasons that will be explained, the Fund’s motion will be allowed.
BACKGROUND
The record before the Court establishes the following facts as undisputed. The Fund is a non-profit unincorporated entity created by statute, G.L.c. 175D, §1 et seq. (the Act). The Fund’s function is to step into the shoes of insolvent insurance companies, so as to pay certain claims that would have been covered by policies written by such companies, subject to statutory limitations and conditions. Massachusetts Motor Vehicle Reinsurance Facility v. Commissioner of Ins., 379 Mass. 527, 530 (1980). Patterned after the so-called “Post-Assessment Properly and Liability Insurance Guaranty Association Model Act,” the Act established the Fund to benefit the public by ensuring that insured persons will be compensated for losses incurred in the event that the insurer becomes insolvent. Ferrari v. Toto, 9 Mass.App.Ct. 483, 487 (1980). The Fund periodically assesses member insurers the amounts required to pay claims. Id. Under G.L.c. 175D, §13, insurers may recoup amounts paid into the Fund by increasing their rates and premiums. In this way, the cost of paying claims against insolvent insurers is ultimately passed on to the insurance-buying public. Massachusetts Motor Vehicle Reinsurance Facility, 379 Mass. at 530.
Dr. Mason, the medical provider named in the underlying action, was insured under a policy of insurance written by Lawrenceville Property and Casualty Company, covering the time period beginning August 25, 2001, and ending August 25, 2002. The policy set a coverage limit of $1,000,000, with supplemental coverage for interest and costs. Lawrenceville merged into MIIX Insurance Company (MIIX) in 2003, and the parties refer to the policy in issue as the “MIIX policy.” On April 9, 2008, a court of competent jurisdiction declared MIIX insolvent, and ordered it liquidated.
As a result of the MIIX insolvency, the potential liability under the MIIX policies for the claims in the underlying cases fell to the Fund, which then brought this declaratory judgment action seeking to establish that its obligation of indemnity is less than $300,000 for all claims in the underlying case. A resolution of this question depends on the terms of the pertinent insurance policy, as well as the provisions of the Act. Accordingly, the Court will recite those terms in detail.
In its declarations page, the MIIX policy identifies its coverage as to “Individual Professional Liability,” and specifies a policy limit for “Each Medical Incident,” and “Aggregate — -Policy Period,” as well as a premium. Section I of the policy, captioned “Coverage Agreements,” defines its coverage as to individual professional liability, as follows:
*163 The Company will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of:
Injury arising out of the rendering of or failure to render, on or after the retroactive date, professional services by any individual insured, or by any person for whose acts or omissions such insured is legally responsible, except as a member of a partnership; . . .
Section v. of the policy, captioned “Limits of Liability,” provides:
(a) The limit of liability stated in the declarations page as “each medical incident” is the total limit of the Company’s liability for damages due to each medical incident. This limit of liability shall apply:
1) separately to each individual named in the Schedule or Insureds;
3) regardless of:
(i) the number of persons or entities claiming injury arising out of the medical incident;
(ii) the number of claims or suits brought on account of the medical incident;
(iii) the number of persons or organizations insured under this policy.
Section VII of the policy provides definitions of terms used therein. It provides that:
“Medical Incident” means all acts or omissions in the rendering or failure to render professional services from which a claim arises or claims arise. All such acts or omissions together with all related acts or omissions in the rendering of such professional services to all persons involved therein or affected thereby shall be considered one medical incident.
DISCUSSION
The Fund’s motion raises a question of law, appropriate for resolution by the Court on summary judgment. See Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). Before approaching the particular question raised, it is important to have an understanding of the provisions of the Fund Act. As stated supra, the Act established the Fund to benefit the public by ensuring that all insured persons will be compensated for losses incurred in the event that the insurer becomes insolvent. Ferrari, 9 Mass.App.Ct. at 487. The Act provides that the Fund “shall be obligated to the extent of the covered claims against the insolvent insurer . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.” G.L.c. 175D, §5(1). The Act defines “Covered claim” to mean “an unpaid claim . . . which arises out of and is within the coverage of an insurance policy . . . issued by an insurer, if such insurer becomes an insolvent insurer and . . . the claimant or insured is a resident of the commonwealth.” G.L.c. 175D, § 1 (2)(a).
In the underlying case, the plaintiffs present more than one claim of injury; the patient claims damages for physical injury, and family members claim damages for loss of consortium. Relying on the provisions of section v. of the MIIX policy limiting liability for each medical incident, the Fund contends that all claims arising from a single medical incident must be aggregated for purposes of application of the statutory cap, so that the Fund’s maximum liability for each claim is less than $300,000, regardless of the number of claims. The defendants here — that is the parties in the underlying case — contend that the statutory cap applies to each claim separately, with the policy limit under the MIIX policy serving as an overall limit on the Fund’s liability for all claims arising from a single medical incident.[3]
No Massachusetts appellate decision has addressed this question. Four judges of the Superior Court have, three reaching the conclusion the Fund urges, and the fourth reaching the opposite conclusion. Compare Massachusetts Insolvency Fund v. Mountzuris, Worcester Civ. No. 08-1962-B (April 15, 2009) (Curran, J.) [25 Mass. L. Rptr. 469] (holding that statutory cap applies to all claims in the aggregate); Massachusetts Insurers Insolvency Fund v. Casado, Bristol Civ. No. 08-1173 (April 1, 2009) (McLaughlin, J.) (same); A.W. Chesterton Company v. Northbrook Excess and Surplus Ins. Co., Middlesex Civ. No. 96-4871 (May 20, 2003) (McLaughlin, J.) (same); and Massachusetts Insurance Insolvency Fund v. Eastern Refractories Co., Inc., Suffolk Civ. No. 89-4811 (November 27, 1991) (Zobel, J.) [12 Mass. L. Rptr. 172); with Plymouth Rubber Co. v. Massachusetts Insurers Insolvency Fund, Suffolk Civ. No. 87-440 (May 24, 1988) (Tuttle, J.) (holding that statutory cap applies to each claim separately).
Appellate courts of four other states have decided the question, based on similar statutes and similar policy language; in each instance those courts have applied the statutory cap to each claim separately. See Katz v. Ohio Ins. Guar. Ass’n, Ohio St.3d 4, 9 (2004) (construing policy provision limiting liability for all claims arising from death of one person, as not “a consolidation clause for purposes of counting how many ‘claims’ exist under the policy”); West Virginia Ins. Guar. Ass’n v. Potts, 209 W.Va. 682, 687 (2001) (“We agree with the courts that hold that each beneficiary of a victim has a separate claim under the state’s guaranty acts. We note . . . that the statutes refer to covered ‘claims’ rather that to covered ‘occurrences’ ”); Oglesby v. Liberty Mut. Ins. Co., 832 P.2d 834, 840 (Okla. 1992) (“There is no basis for substituting the word ’occurrence’ for ’claim’ in order to aggregate multiple claims arising from a single accident”); Cooper v. Huddy, 581 So.2d 723, 726 (La.App.1991) (survivors’ wrongful death claims, separate under Louisiana Law, not aggregated for purpose of application of statutory cap under guaranty statute). See also Connecticut Ins. Guar. Ass’n v. Fontaine, 278 Conn. 779, 794 (2006) (construing guaranty statute as cov *164 ering loss of consortium claim as separate claim from underlying injury); CD Inv. Co. v. California Ins. Guar. Ass’n, 84 Cal.App.4th 1410, 1423 (2000) (statute does not support aggregation of claims under multiple policies issued to insured by insolvent insurer; legislature “understood the difference between ‘claim’; and ‘occurrence’"); compare Keystone Inc. v. Pennsylvania Prop. & Cas. Ins. Guar. Ass’n, 574 Pa. 147, 155 (2003) (surviving spouse and children each entitled to recover up to statutory cap where statute set cap “per claimant”); H.K. Porter v. Pennsylvania Ins. Guar. Ass’n, 75 F.3d 137, 141 (3rd Cir. 1996) (construing Pennsylvania statute as applying statutory cap to each claim of injury from asbestos exposure).[4]
General Laws c. 175D, §§5(l)(a) and (l)(b) provide that the Fund is obligated “to the extent of the covered claims against the insolvent insurer” and is “deemed the insurer to the extent of its obligation on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent.” The Fund is not an insurer; it does not issue policies, collects no premiums, and realizes no profit. Rather, it stands in the shoes of the insolvent insurer to the extent that it is statutorily obligated on the covered claim. Pilon’s Case, 69 Mass.App.Ct. 167, 171 (2007). As set forth supra, a covered claim is one that “arises out of and is within the coverage of’ the insurance policy issued by the insolvent insurer. The statute thus directs the Court to the language of the insurance policy in question to determine what the policy recognizes as a “covered claim,” to which to apply the statutoiy cap.[5]
The MIIX policy describes its coverages in Section I, as quoted supra. Under that section, the policy covers “injury . . . arising out of’ the rendering of professional services. Thus, any claim of such injury is within the coverage of the policy. To say that the policy covers a claim, however, does not determine how much the policy would pay on that claim; the answer to that question appears in Section V, which limits liability for such injuries to a single total amount for each medical incident, regardless of the number of “persons claiming injury,” “claims or suits,” or “persons or organizations insured.” This language, on its face, recognizes the separateness of the various claims of injury that it aggregates for purposes of application of the policy limit. The definition of medical incident, at section VII, reflects the same recognition, in its reference to an event from which “a claim arises or claims arise.” By its plain terms, the policy acknowledges that a medical incident might give rise to more than one covered claim; precisely because of that recognition, section v. directs that the policy limit apply collectively to all claims arising from a single medical incident.
The statute does not make reference to aggregation provisions of a policy, nor does it refer to an occurrence, or a medical or other type of incident as a trigger for application of the statutoiy cap. It does not, by its terms, set a cap for all claims arising from an incident. Rather, section 5(1) (a) refers to each “claim” as the basis for application of the cap; it limits the Fund’s liability to “that amount of each covered claim” that is less than $300,000. A claim must be “covered” by the policy to trigger the Fund’s liability, and the policy determines what claims are or are not covered, but once that determination has been made, it is the statutoiy language, not any aggregation provision of the policy, that governs application of the cap. That language, in the Court’s view, requires application of the cap separately to each covered claim, so that the Fund is obligated with respect to each claim for an amount up to $299,999.
This reading comports with the purpose of the statute, as well as its language. See Sullivan v. Brookline, 435 Mass. 353, 360 (2001) (“[a] fundamental tenet of statutory interpretation is that statutoiy language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result”); DiGiacomo v. Metropolitan Property & Cas. Ins. Co., 66 Mass.App.Ct. 343, 346 (2006) (“a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated”). The purpose of the statutoiy scheme embodied in c. 175D is to protect insured and injured persons from financial losses in the event that the responsible insurer becomes insolvent. Ferrari, 9 Mass.App.Ct. at 487. The legislature has set a limit on the amount of the Fund’s liability with respect to each claim, so as avoid undue impact on the overall cost of insurance, but it has not seen fit to impose that limit in the aggregate on groups or sets of claims that arise from a single occurrence. See Bronstein v. Prudential Ins. Co. of America, 390 Mass. 701, 708 (1984) (court cannot insert words in a statute that is clear and unambiguous). The legislative choice reflects a balancing of the interests of claimants and insureds against the interests of premium payers overall. It is not up to the Court to upset that balance. The Court concludes, therefore, that the defendants are entitled to summary judgment pursuant to Mass.R.Civ.P. 56(c). Judgment will enter declaring that the Fund is liable for an amount up to $299,999 for each separate claim cognizable under Massachusetts law, up to a total not to exceed the limits of the policy.[6]
CONCLUSION AND ORDER
For the reasons stated, plaintiff Massachusetts Insurers Insolvency Fund’s Motion for Summary Judgment is DENIED.

The underlying case is Smith v. Mason, D.O. (Suffolk Civil Action 05-0694), in which three plaintiffs asserts claims of negligence and loss of consortium against one medical provider, based on the care of a single patient in 2002.

b'o put the dispute in concrete terms, the defendants contend that the Fund is liable for up to $299,999 for the patient’s claim of negligence, and up to an additional $299,999 for each family member’s claim for loss of consortium, but a total of no more than the policy limit of $1,000,000.

The Fund cites Florida Ins. Guar. Ass’n v. Cole, 573 So.2d 868, 870 (1990); Knipp v. Arizona Prop. & Cas. Ins. Guar Fund, 750 P.2d 895, 897 (1987); and Vickodil v. Pennsylvania Ins. Guar. Ass’n, 514A.2d 635,637-38 (Pa. 1986).These cases address issues distinct from that presented here. Florida Ins. Guar. Ass’n and Knipp both involve wrongful death actions under statutes that, like G.L.c. 229, §2, treat wrongful death as a single claim to be brought by the executor for the benefit of all survivors; based on those statutes, the courts held that the statutory cap applies once, no matter the number of beneficiaries. See Doyon v. Travelers Indemnity Co., 22 Mass.App.Ct. 336, 339 (1986). Neither addressed statutorily separate claims for conscious pain and suffering. Vickodil construed the language of the insurance policy as excluding claims for loss of consortium, so that the only claim within the coverage of the policy was that of the person who had suffered physical injury.

The interpretation of an insurance policy is a question of law for the court, Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982), and where the terms of the policy are unambiguous, its interpretation is appropriate for summary judgment. Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006). Where the provisions of an insurance policy are plainly expressed, the policy must be enforced in accordance with its terms, Cody, 387 Mass. at 146, and interpreted in a manner consistent with what an objectively reasonable insured would expect to be covered. McGregor v. Allamerica Ins. Co., 449 Mass. 400, 402 (2007); City Fuel Corp. v. National Ins. Co. of Hartford, 446 Mass. 638, 642-43 (2006).

Under G.L.c. 175D, §5(l)(b), the Fund is “deemed the insurer to the extent of its obligations on the covered claims.” Since the insurer’s obligations extend only to the amount of the policy limit, the Fund’s total obligations cannot exceed that amount.